UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                      :

GENERAL ELECTRIC INTERNATIONAL, INC. and   :
GENERAL ELECTRIC INTERANATIONAL, INC.     :
TAIWAN BRANCH (USA),                            :

                         Plaintiffs,        :            21 Civ. 6154 (JPC)

                                    :      <u>OPINION AND ORDER</u>

        -v-                            :

THORCO SHIPPING AMERICA, INC. and THORCO   :
PROJECTS A/S,                              :

                      Defendants.      :
                                    :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiffs General Electric International, Inc. and General Electric International, Inc. Taiwan Branch (USA) bring this maritime action against Defendants Thorco Shipping America, Inc. ("Thorco Shipping") and Thorco Projects A/S ("Thorco Projects"). Plaintiffs allege that Defendants, who operate as common carriers of goods for hire, were negligent in their handling and transportation of certain cargo owned by Plaintiffs, and thereby breached their statutory, common law, and contractual duties and obligations to Plaintiffs. Thorco Projects moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), for improper forum pursuant to Rule 12(b)(3), or for *forum non conveniens*. Thorco Projects further seeks to stay discovery pending the Court's decision on its motion to dismiss. For the reasons stated below, the Court denies Thorco Projects's motion to stay discovery. The Court also denies Thorco Projects's motion to dismiss for lack of personal jurisdiction without prejudice to Thorco Projects renewing its motion to dismiss after the completion of jurisdictional discovery.

# I.    Background

## A.  Facts[1]

On or about January 16, 2015, Plaintiffs and Thorco Shipping entered into a services contract titled, "Ocean Transportation Contract for Project Cargo," pursuant to which Thorco Shipping agreed to provide transportation services for cargo shipments.   Dkt. 25 ("Putallaz Declaration"), Exh. A ("Ocean Transportation Contract"); Complaint ¶ 10.[2]   Thorco Shipping's

---

[1] The following facts are taken from the Complaint, Dkt. 1 ("Complaint"), as well as the documents referenced in the Complaint and appended to the parties' declarations filed in connection with the motions to dismiss and stay.   *See Vista Food Exch., Inc. v. Champion Foodserv., LLC*, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015) ("Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." (internal quotation marks omitted)); *ESI Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 50 n.54 (S.D.N.Y. 1999) ("In considering a Rule 12(b)(2) motion, the court may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56.").

The Court, however, does not consider the additional facts alleged in the parties' briefs.   It is a "well-settled rule that '[f]actual allegations contained in legal briefs or memoranda are [] treated as matters outside the pleading for purposes of Rule 12(b)' and, therefore, cannot be considered by the Court at the motion to dismiss stage." *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7065 (RA), 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019) ("[T]he Court will not consider these factual allegations raised for the first time in a brief in opposition to a motion to dismiss.").

[2] Non-party Global Shippers Association, acting on behalf of its member General Electric Company ("GE"), executed the Ocean Transportation Contract.  Ocean Transportation Contract at 2, 27.  Although Plaintiffs are not signatories to the Ocean Transportation Contract, the contract defines "GE" broadly to include any entity that "is controlled by or is under common control with GE."   *Id.*  ¶¶ 1.3 (defining "GE" to mean "General Electric Company or one of its operating businesses or any GE Affiliate as defined in this Article 1 who enters into a Statement of Work with [Thorco Shipping]."); 1.4 (defining "GE Affiliate" as "any entity, including . . . any individual, corporation, company, partnership, limited liability company or group, that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with GE.").  The Ocean Transportation Contract further provides that "[a]ny 'GE Affiliate' may access and use this Contract."   *Id.* ¶ 3.3.  Accordingly, the Court presumes that both Plaintiffs are parties to the Ocean Transportation Contract for the purposes of deciding Thorco Projects's motion to dismiss.  *See* Complaint ¶ 10.

responsibilities under the Ocean Transportation Contract include, among other things, providing a "seaworthy" vessel, either owned or chartered by Thorco Shipping, for the transportation of cargo, *id.* ¶¶ 6.2, 8.2, 8.3, "loading, handling, stowage, securement, and discharge" of the cargo, *id.* ¶ 14.2(a); Complaint ¶ 12, and providing Plaintiffs with "daily reports of the Vessel's position, ETA at discharge point, damage to vessel or the [cargo], and expected delays," Ocean Transportation Contract ¶ 9.4.   The parties agreed that the Ocean Transportation Contract would "appl[y] to all Project Cargo shipments that [Plaintiffs] tender[] to [Thorco Shipping] during the Term for performance of Services specified in this Contract, its Appendixes, and any [Statement of Work] issued hereunder."   *Id.* ¶ 3.1.   Thorco Projects is not a signatory to the Ocean Transportation Contract nor mentioned by name anywhere in that contract.   *See generally* Ocean Transportation Contract.

As relevant here, the Ocean Transportation Contract provides that New York law governs the parties' rights and obligations under the contract.   *Id.* ¶ 32.1.   It also contains a forum selection clause, designating federal or state court in New York as the appropriate forum for commencing any litigation arising out of the Ocean Transportation Contract, and provides that "[t]he parties submit to personal jurisdiction in [New York federal or state court] and waive any defenses regarding venue or *forum non conveniens*."   *Id.* ¶ 32.2.   Moreover, the Ocean Transportation Contract expressly states that its terms "take precedence over any alternative terms and conditions in any other document connected with this transaction unless such alternative terms are expressly incorporated by reference on the face of this Contract."   *Id.* ¶ 35.   Several other provisions of the Ocean Transportation Contract are to the same effect.   *See id.* ¶¶ 3.1 ("The terms of this Contract, it[s] Appendixes and any [Statement of Work] will supersede any conflicting or contrary terms issued by [Thorco Shipping] in any Booking Note or Confirmation, bill of lading, or other shipping

documentation issued by [Thorco Shipping].”), 6.2 (“The Booking Confirmation provisions will not control over conflicting provisions in this Contract and any [Statement of Work].”), 17 (“In the event of a conflict between the terms of the Bill of Lading or the terms of a Booking Confirmation and the terms of this Contract, the terms of this Contract will take precedence over any such conflicting terms.”).

Pursuant to the Ocean Transportation Contract, on or about June 30, 2020, Thorco Shipping issued a booking note to Plaintiffs for the shipment of “67 packages of HRSG Erection Frames, HRSG Transition Duct, and HRSG Secondary Steel” owned by Plaintiffs (the “Cargo”). Complaint ¶ 11; Dkt. 26 (“O’Brien Declaration”), Exh. E (“Booking Note”).[3] The Booking Note lists “Thorco Projects A/S” as the “Carrier,” “General Electric (GE)” as the “Merchant,” and “M.V. Thorco Lineage or Sub” as the “Vessel’s name.” *Id.* at 1. The Booking Note also indicates that the Cargo would be shipped sometime around July 7-10, 2020, from Hai Phong, Vietnam to Taichung, Taiwan. *Id.*; Complaint ¶ 11. On or about July 14, 2020, Defendants received the Cargo for transportation pursuant to bill of lading no. 2003010001. Complaint ¶ 11; O’Brien Declaration, Exh. F (“Bill of Lading”).

The boilerplate terms of both the Booking Note and the Bill of Lading provide, in relevant part, that “[t]his Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London” in accordance with the applicable procedures of the London Maritime Arbitrators Association (“LMAA”). Booking Note at 2 ¶ 4; Bill of Lading at 2 ¶ 4. Both the Booking Note

---

[3] The booking note that Thorco Projects submitted in connection with its motion to dismiss, *see* Dkt. 19 (“Mikkelsen Declaration”), Exh. 2; Dkt. 32, Exh. 1, differs from the version submitted by Plaintiffs. But the terms of the Booking Note that are material to Thorco Projects’s motion to dismiss appear to be the same in both versions.

and the Bill of Lading define "Contract" as "the contract of carriage pursuant to the booking note and the bill of lading (when issued)."  Booking Note at 2 ¶ 1; Bill of Lading at 2 ¶ 1.  In addition to the boilerplate terms, the Booking Note includes special terms which provide:

- Bimco's Conway / voywar 2004 / isps clauses latest edition to apply BIMCO/LMAA Arbitration Cause as published on the official site of The London Maritime Arbitrators Association - http://www.imaa.org.uk - to be fully applicable to this contract and any Bill of Lading issued hereunder.  English Law / London Arbitration

- Otherwise as per Carrier BN & B/L / GE MSA agreement CTA# 1189 between GE & Thorco Projects

Booking Note at 1.  The Booking Note also provides that "this contract shall be performed subject to the terms contained on page 1 and 2 hereof which shall prevail over any previous arrangements and apply to the bill of lading, the terms of which are found on the reverse side hereof."  *Id.*

The Complaint alleges that, "[a]t the time of delivery at the discharge port, the Cargo was discovered to be physically damaged in that, *inter alia*, crate no. HRSG2-BA31-4101887098-250-W0106-001 . . . was physically damaged including that the steel plate was bent."  Complaint ¶ 13.  The Complaint also alleges that, due to Defendants' failure to deliver the Cargo "in the same good order and condition to its destination as it was received," Plaintiffs sustained estimated damages in the amount of $68,602.00.  *Id.* ¶¶ 14, 17.

## B.  Procedural History

Plaintiffs commenced this action by filing the Complaint on July 19, 2021.  On that same day, Plaintiffs commenced arbitration proceedings in London, United Kingdom, by serving demands on Thorco Projects and Phoenix Carriers Corporation SA, the vessel owner (the "London Arbitration").  O'Brien Declaration ¶ 7.  On October 13, 2021, Thorco Projects moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), for improper forum pursuant to Rule 12(b)(3), or for *forum non conveniens*.  Dkts. 17, 18 ("MTD"), 19.  Thorco

Projects also filed a motion to stay discovery pending the Court's decision on its motion to dismiss. Dkts. 20-21.  On November 3, 2021, Plaintiffs opposed Thorco Projects's motion to dismiss, Dkt. 24 ("Opposition"); Putallaz Declaration; O'Brien Declaration, and motion to stay discovery, Dkts. 27-28.  Thorco Projects filed its reply in further support of its motions to dismiss and to stay discovery on November 16, 2021.  Dkts. 31 ("Reply"), 32.[4]

On May 4, 2022, the Court issued an order directing Plaintiffs and Thorco Projects to "file a joint letter updating the Court as to the London Arbitration, including the status of discovery, and proceedings that have occurred thus far, any upcoming deadlines, and the scheduled dates of any further proceedings or hearings." Dkt. 38.  On May 11, 2022, the parties filed a letter advising the Court that "there have been no developments in the London Arbitration proceedings."  Dkt. 39.  Specifically, the parties advised that "Thorco Projects A/S did not respond to the notice since Plaintiffs also commenced this instant action and Thorco Projects sought to avoid duplicative proceedings" and that "[t]he Arbitration Tribunal has not been constituted but can be promptly, if necessary, after adjudication of the pending motion to dismiss."  *Id.*

## II.    Motion to Stay

The Court begins by addressing Thorco Projects's motion to stay discovery.  "Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)."  *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (internal quotation marks and alterations omitted).  In deciding whether to stay discovery pending the resolution of a dispositive motion, courts assess "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson*

---

[4] Thorco Shipping filed its Answer to the Complaint on September 20, 2021.  Dkt. 13.

*Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)).  Courts generally consider "the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Republic of Turkey*, 316 F. Supp. 3d at 677.  However, "[t]he pendency of a dispositive motion is not, in itself, an automatic ground for a stay."  *Mirra v. Jordan*, No. 15 Civ. 4100 (AT) (KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (internal quotation marks omitted); *cf. Kwik Ticket Inc. by Shamah v. Spiewak*, No. 20 Civ. 1201 (FB), 2020 WL 5658723, at *2 (E.D.N.Y. Sept. 23, 2020) ("[T]he mere existence of a motion to compel arbitration is an insufficient basis to stay discovery[.]").

Here, the Court concludes that a stay of discovery is not justified.  As an initial matter, in the event the Court dismisses Plaintiffs' claims against Thorco Projects, Plaintiffs will need to pursue the same claims against Thorco Projects in the London Arbitration.  Given that the parties will need to engage in substantively the same discovery whether or not they proceed with Plaintiffs' claims in this litigation or in the London Arbitration, it is unlikely that Thorco Projects will be significantly burdened, if at all, by having to respond to Plaintiffs' requests for discovery in this litigation.  In contrast, the Court finds that Plaintiffs likely will be prejudiced by a stay of discovery, particularly since discovery as to the co-Defendant, Thorco Shipping, is proceeding. Nor does Plaintiffs' decision to commence the London Arbitration weigh in favor of a discovery stay as to Thorco Projects.  In support of their opposition to a stay, Plaintiffs submitted a sworn declaration from their counsel, explaining that they "commenced arbitration proceedings in London . . . as a preventive measure solely to protect any statute of limitations or other time bar in the event [their] action in this Court should not be permitted to proceed for any reason."  Dkt.

28 ¶ 5; *see also* Dkt. 39 ("To preserve rights, Plaintiffs commenced the arbitration by letter dated 19 July 2021[.]").

Furthermore, the parties advised the Court in their May 11, 2022 letter that "there have been no developments in the London Arbitration proceedings," and that since Plaintiffs served Thorco Projects with the demand on July 19, 2021, no "Arbitration Tribunal has [] been constituted," and "there are no upcoming deadlines or scheduled proceedings or hearings." *Id.* While Thorco Projects represents that it "is ready to arbitrate [in London]," Dkt. 21 at 4, it has also expressed that it would respond to the arbitration demand and move forward with the London Arbitration only *after* the Court's adjudication of its pending motion to dismiss, Dkt. 39. Because the Court finds that at least some discovery is necessary before the Court can resolve Thorco Projects's motion to dismiss, *see infra* Section III, staying discovery pending the Court's decision on the motion to dismiss would hinder Plaintiffs' efforts to advance their claims against Thorco Projects in both this litigation and the London Arbitration. For all of these reasons, the Court denies Thorco Projects's request to stay discovery pending the resolution of its motion to dismiss.

### III.     Motion to Dismiss for Lack of Personal Jurisdiction

Turning to Thorco Projects's motion to dismiss, the Court will first address the relevant legal standard on a motion to dismiss for lack of personal jurisdiction and then proceed to address why jurisdictional discovery is appropriate here.

### A.  Federal Rule of Civil Procedure 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of raising facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and alterations omitted); *accord In re Terrorist Attacks*

*on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Prior to conducting discovery, a plaintiff need make only a "*prima facie* showing" that jurisdiction exists. *Id.* at 85 (quoting *Ball*, 902 F.2d at 197). Such showing may be made by pleadings and affidavits "containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (cleaned up); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). "In doing so, [the Court] construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Secs., Inc.*, 722 F.3d at 85 (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673.

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction, 'a district court has considerable procedural leeway.'" *Metro-Goldwyn-Mayer Studios Inc. v. Canal+ Distrib. S.A.S.*, No. 07 Civ. 2918 (DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." (internal quotation marks omitted)). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction."

*Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003)).  "However, a court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed . . .  in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction."  *Id.* (citing first *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998); then *APWU*, 343 F.3d at 627).

## B.  Personal Jurisdiction

To lawfully exercise personal jurisdiction, a court must have "a statutory basis for exercising personal jurisdiction."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  In determining whether there is personal jurisdiction over a foreign defendant in a federal-question case, the Court must first "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York," and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."  *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014).  In doing so, a court first looks to "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Chloé*, 616 F.3d at 164 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction."  *Id.*  "Specific jurisdiction exists when 'a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'"  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)).  "A court's general jurisdiction, on the other hand,

is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.*

It is well-settled that "parties to a contract may agree in advance to submit to the jurisdiction of a given court" through forum-selection clauses. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964); *accord D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *Licensed Practical Nurses, Technicians & Health Care Workers of N.Y, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 403 (S.D.N.Y. 2000) ("Unlike subject matter jurisdiction, *in personam* jurisdiction may be based on consent.  A forum selection clause thus could be highly relevant, or even controlling, as to whether . . . the selected forum has *in personam* power." (citations omitted)). This is the case even where a party lacks sufficient minimum contacts with the forum state. *Berkley Assurance Co. v. MacDonald-Miller Facility Solutions, Inc.*, No. 19 Civ. 7627 (JPO), 2019 WL 6841419, at *7 (S.D.N.Y. Dec. 16, 2019) (denying the defendant's motion to dismiss for lack of personal jurisdiction where the defendant argued that there was "an absence of minimum contacts between [the defendant] and New York" because the defendant "consented to personal jurisdiction through the forum-selection clause"); *see also Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 334 (S.D.N.Y. 2018) ("[P]arties to [a] forum selection clause . . . have waived any objection to personal jurisdiction."). Thus, "[w]here an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Export-Import Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010)); *Atl. Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001) ("[W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional

11

due process requirements have been met."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v Williams*, 637 N.Y.S.2d 36, 38 (App. Div. 1996) ("It is axiomatic that the very point of a selection of forum clause is to avoid litigation over personal jurisdiction and disputes over the application of the long-arm statute.").

## C. Analysis

Thorco Projects moves to dismiss for lack of personal jurisdiction because it "is a foreign business entity operating and existing under the laws of Denmark" and "does not maintain offices in New York and has no place of business in New York."  Mikkelsen Declaration ¶¶ 8-9; MTD at 5-6.  Thorco Projects also argues that, as a non-signatory to the Ocean Transportation Contract, it is not bound by the contract's forum selection clause, which designates New York as the appropriate forum for resolving any disputes arising out of the contract.  MTD at 6.  Instead, Thorco Projects contends that Plaintiffs' claims against it are governed by the Booking Note and the Bill of Lading, which, according to Thorco Projects, designates arbitration in London as the appropriate forum for resolving the parties' dispute.  *Id.* at 6-8.

While Plaintiffs do not dispute that Thorco Projects is not a signatory to the Ocean Transportation Contract, they argue that Thorco Projects nonetheless is bound by that contract's forum selection clause and, thus, is subject to personal jurisdiction in New York.  Plaintiffs first argue that Thorco Projects is subject to the Ocean Transportation Contract by virtue of the Bill of Lading.  *See* Opposition at 7-11.  The Booking Note expressly incorporates the Ocean Transportation Contract, including the forum selection clause, by reference.  Booking Note at 1. The Bill of Lading, in turn, incorporates the Booking Note.  Bill of Lading at 1; *see* Mikkelsen Declaration ¶ 3.  Thus, according to Plaintiffs, the Bill of Lading to which Thorco Projects *is* a party incorporates the Ocean Transportation Contract, including its New York forum selection

clause and provisions that its terms supersede conflicting or contrary terms in any booking note, bill of lading, or other shipping documentation issued by Thorco Shipping.  *See* Opposition at 7-11.  Second, Plaintiffs argue that Thorco Projects should be bound by the Ocean Transportation Contract's forum selection clause for the additional reason that Thorco Projects is "closely related" to Thorco Shipping, which is a signatory to the Ocean Transportation Contract.  *Id.* at 12-13.  In the alternative, Plaintiffs request that the Court permit limited discovery to determine whether Thorco Projects consented to this Court's jurisdiction.  *Id.* at 14.

With respect to Plaintiffs' second argument, "[u]nder New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is closely related to one of the signatories such that enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound."  *Metro-Goldwyn-Mayer Studios Inc.*, 2010 WL 537583, at *5 (internal quotation marks omitted); *cf. In re Lloyd's Am. Tr. Fund Lit.*, 954 F. Supp. 656, 670 (S.D.N.Y. 1997) ("The relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound.").  As the Second Circuit has recognized, "where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses."  *Magi XXI, Inc. v. Stato Della Città del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (internal quotation marks omitted).

In general, the "closely related" test is met when the non-signatory's interests are "completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct."  *Leviton Mfg. Co., Inc. v. Reeve*, 942 F. Supp. 2d 244, 258 (E.D.N.Y. 2013)

(cleaned up).  Courts have also held that "the non-signatory must have been otherwise involved in the transaction in some manner." *Recurrent Cap. Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 308 (S.D.N.Y. 2012).  Under this framework, district courts in this Circuit have found that a non-signatory is "closely related" to a signatory to a contract such that the forum selection clause in the contract may be enforceable against the non-signatory where "the non-signatory is an intended beneficiary," *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*,  No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000) (cleaned up), the non-signatory and the signatory share "a close business relationship" such that their business operations are "intertwined," *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 160-61 (E.D.N.Y. 2012), or the non-signatory is hired to carry out the signatory's contractual obligations, *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369-70 (S.D.N.Y. 2011).

Plaintiffs contend in their Opposition that Thorco Projects and Thorco Shipping are closely related because Thorco Projects (1) owns 75% of Thorco Shipping, Opposition at 13 (citing O'Brien Declaration, Exh. B), (2) "holds itself as maintaining an office and booking office in Houston, Texas, but is not itself registered to do business in the State of Texas," *id.* (citing O'Brien Declaration ¶ 5, Exh. C), and (3) "appears to do business through its subsidiary, Thorco Shipping, which appears to do business as 'Thorco Projects America'," *id.* (citing O'Brien Declaration ¶¶ 4-6, Exhs. B-E).  Although Plaintiffs have taken a substantial step towards establishing that Thorco Projects may be closely related to Thorco Shipping such that the Ocean Transportation Contract's forum selection clause may be invoked on Thorco Projects, the Court finds that jurisdictional discovery and further briefing is warranted before resolving this issue.  For example, jurisdictional discovery may reveal whether Thorco Projects had any role in the negotiation, drafting, or execution of the Ocean Transportation Contract; whether Thorco Projects has or had any role in

Thorco Shipping's performance of its obligations under the Ocean Transportation Contract, including whether Thorco Projects was hired to carry out Thorco Shipping's obligations; the nature of the relationship between Thorco Projects and Thorco Shipping; whether Thorco Projects was an intended beneficiary of the Ocean Transportation Contract; and generally whether Thorco Projects's interests are derivative of and directly related to Thorco Shipping's interests or conduct.[5] Accordingly, the Court grants Plaintiffs' request for limited discovery as to whether Thorco Projects has consented to this Court's jurisdiction through the Ocean Transportation Contract.[6]

## IV.    Conclusion

For the foregoing reasons, the Court denies Thorco Projects's motion to stay discovery and denies its motion to dismiss the Complaint without prejudice to Thorco Projects filing a renewed motion to dismiss upon the conclusion of jurisdictional discovery.   The Court further grants Plaintiffs' request for limited jurisdictional discovery as to whether Thorco Projects consented to personal jurisdiction in New York.   The parties shall meet and confer regarding the appropriate

---

[5] In its Reply, Thorco Projects cites to an opinion by the Honorable Jed S. Rakoff in *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395 (S.D.N.Y. 2019), for the proposition that "even if a finding is made that the non-party sought to be bound to the forum selection clause is closely-aligned to the signatory entity, exercise of jurisdiction still must comport with due process."  Reply at 5.  While the Court does not opine on the import of Judge Rakoff's decision in *Arcadia Biosciences, Inc.* at this time, the parties also may explore Thorco Projects's contacts with New York during jurisdictional discovery, and may want to address this issue, as necessary, in any further briefing on Thorco Projects's anticipated renewed motion to dismiss.

[6] Because the Court grants Plaintiffs' alternative request for jurisdictional discovery, the Court does not reach the other grounds for dismissal presented in Thorco Projects's motion to dismiss at this time.  Moreover, if discovery reveals that Thorco Shipping is closely related to Thorco Shipping such that it is bound by the forum selection clause of the Ocean Transportation Contract, that may impact the analysis of the other grounds raised by Thorco Projects for dismissal. *See* Ocean Transportation Contract ¶ 32.2 ("The parties . . . waive any defenses regarding venue or *forum non conveniens*."); *see also Fasano v. Yu Yu*, 921 F.3d 333 (2d Cir. 2019) ("Where the parties have contractually selected a forum, however, the forum selection clause substantially modifies the *forum non conveniens* doctrine and the usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." (cleaned up)).

scope of jurisdictional discovery, and shall file a letter by June 8, 2022, proposing a schedule for completion of that discovery.  The Court will then set a schedule for jurisdictional discovery[7] as well as for any briefing on Thorco Projects's renewed motion to dismiss after the completion of jurisdictional discovery.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 17 and 20.

     SO ORDERED.

Dated: May 24, 2022
     New York, New York

                          JOHN P. CRONAN
                      United States District Judge

---

[7] Regular discovery, pursuant to the Case Management Plan, Dkt. 37, shall otherwise proceed during this jurisdictional discovery.